UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Civil Action No. :

**THEHOMEMAG HOLDING COMPANY LLC,**

*Plaintiff*,

v.

**JEFFREY R. SHAPPER d/b/a GC HOMEMAG,**
*Defendant.*

**COMPLAINT AND JURY DEMAND**

Plaintiff, TheHomeMag Holding Company LLC ("HomeMag" or "Plaintiff"), by and through its attorneys, Gamberg & Abrams and Nolte Lackenbach Siegel, for its complaint (this "Complaint") against Defendant Jeffrey R. Shapper d/b/a GC HomeMag ("Shapper" or "Defendant"), hereby alleges as follows:

## NATURE OF ACTION

1. This is an action for trademark infringement and false designation of origin and unfair competition, arising under the Federal Trademark Act of 1946, as amended, commonly known as the Lanham Act, 15 U.S.C. §§1051 et seq., and the statutes and common law of the State of Florida. HomeMag seeks permanent injunctive relief as well as other equitable relief and compensatory and punitive damages arising from Defendant's willful, unlawful, intentional, unfair, and misleading conduct and unjust enrichment.

## THE PARTIES, JURISDICTION, AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331, 1338, and 1367.

1

3. Plaintiff HomeMag is a limited liability company organized under the laws of the State of Florida, having its principle place of address at 1732 SE 47th Terrace, Cape Coral, FL 33904.

4. The actions of Defendant Shapper complained of in this Complaint have been and continue to be committed within the Southern District of Florida.

5. Upon information and belief, Defendant Shapper is an individual and resident of the State of Florida, doing business as GC HomeMag, with a residence address at 9141 Pineville Drive, Lake Worth Beach, FL 33467, and business addresses listed at 335 E. Linton Blvd., Suite 2076, Delray Beach, FL 33483, and 701 SE 6th Avenue, Suite 102, Delray Beach, FL 33483.

6. Upon information and belief, Defendant contracts to supply goods and/or services, and/or transact business in Florida and within this judicial district; and the tortious acts of Defendant complained of in this Complaint, including, without limitation, the infringement of HomeMag's trademarks, have caused harm to HomeMag within Florida and this judicial district.

7. Personal jurisdiction exists over the Defendant as he is a resident of the State of Florida and this judicial district and division.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**FACTUAL ALLEGATIONS**

9. HomeMag is a national publisher of real estate and home improvement focused print and digital magazines entitled "TheHomeMag" (the "HomeMag Magazines"), which feature advertising and content designed to connect homeowners with home improvement professionals and which are tailored and directed to individual geographic markets throughout the United States.

10. HomeMag has been designing, producing, marketing, offering and selling its HomeMag Magazines under the brand "TheHomeMag" throughout individual geographic markets in the U.S. for over 20 years, since at least 2003. HomeMag currently tailors its HomeMag Magazines for and offers and sells them throughout cities and locations in 32 U.S. states, including without limitation California, New York, Florida, Georgia, Arizona, Texas, New Jersey, North Carolina, South Carolina, Washington, Colorado, Illinois, and the District of Columbia.

11. Since it began publishing its HomeMag Magazines in print form, HomeMag has succeeded and expanded to add digital publications, steadily grown its advertising base throughout its various geographic markets, and has become well known to real estate and home improvement professionals, and to home owners, sellers, and buyers, as a reliable source of content and valuable information about real estate and home improvement in their home areas.

**HomeMag's Trademarks**

12. HomeMag owns, and since at least 2003 has used the trademark THEHOMEMAG (the "HomeMag Trademark") in connection with the publication of magazines, advertising services, and the creation and providing of on-line publications directed to real estate and home improvement. HomeMag has used its HomeMag Trademark, both as a plain letter word mark, and as the logo marks THEHOMEMAG and ⌂THEHOMEMAG (collectively, the "HomeMag Trademarks"), openly, notoriously, and continuously since at least 2003 on, and in connection with its HomeMag Magazines, on and in connection with its website located at theHomeMag.com (the "HomeMag Website"), on its "TheHomeMag" Facebook site and through other social media, in marketing and advertising, through its TheHomeMag business certification program, and through promotional products, events, and merchandise.

3

13. HomeMag is the owner of a family of federal trademark registrations and applications for its HomeMag Trademarks, which comprise the following:

(a) United States Trademark Registration No. 3,553,651 for the mark **TheHomeMag** for use in connection with its print HomeMag Magazines in International Class 16, with a first use date of January 31, 2003;

(b) United States Trademark Registration No. 3,553,654 for the mark **TheHomeMag** for use in connection with advertising and promotional services in International Class 35, with a first use date of January 31, 2003;

(c) United States Trademark Registration No. 3,560,247 for the mark **TheHomeMag** for use in connection with providing its HomeMag Magazines online and in interactive format in International Class 41, with a first use date of January 31, 2003;

(d) United States Trademark Registration No. 3,556,706 for the mark **THEHOMEMAG** for use in connection with its print HomeMag Magazines in International Class 16, with a first use date of January 31, 2003;

(e) United States Trademark Registration No. 3,553,663 for the mark **THEHOMEMAG** for use in connection with advertising and promotional services in International Class 35, with a first use date of January 31, 2003;

(f) United States Trademark Registration No. 3,553,674 for the mark **THEHOMEMAG** for use in connection with providing its HomeMag Magazines online and in interactive format in International Class 41, with a first use date of January 31, 2003;

(g) United States Trademark Registration No. 7,773,841 for the mark ⌂THEHOMEMAG for use in connection with its print HomeMag Magazines in International Class 16, with a first use date of May 25, 2023;

(h) United States Trademark Registration No. 7,773,842 for the mark ⌂THEHOMEMAG for use in connection with advertising and promotional services in International Class 35, with a first use date of May 25, 2023; and

(i) United States Trademark Application Serial No. 98/437,036 (the "Application") for the mark ⌂THEHOMEMAG for use in connection with providing its HomeMag Magazines online and in interactive format in International Class 41, with a first use date of May 25, 2023.

14. HomeMag may refer to its registrations for its HomeMag Trademarks (paragraphs 13(a)–(h) described above) collectively as the "Registrations," with each being a "Registration."

15. HomeMag has used its HomeMag Trademarks and its Registrations openly, notoriously, and continuously in interstate commerce in connection with the marketing, advertising, and sale of goods and services associated with its HomeMag Magazine, including without limitation the goods and services listed in the Registrations (collectively, the "HomeMag Goods and Services") since the dates of first use set forth in the Registrations, all dates prior to any of the acts of Defendant complained of herein.

16. The HomeMag Trademarks are inherently distinctive and strong trademarks.

17. Because of HomeMag's extensive use and promotions of the HomeMag Trademarks, and in light of the unsolicited media coverage and notoriety pertaining to the HomeMag Goods and Services and the HomeMag Trademarks, the HomeMag Trademarks have become distinctive and prominent, have acquired a secondary meaning, and indicate and

5

designate HomeMag as the single source of origin of goods and services marketed, offered and sold in connection therewith.

18. HomeMag has used its HomeMag Trademarks extensively since their first use, in connection with a variety of goods and services.

19. HomeMag has advertised and otherwise promoted its HomeMag Trademarks extensively since their first use, through social media, websites, and other means.

20. The HomeMag Goods and Services marketed, offered and sold in connection with, and/or bearing the HomeMag Trademarks have been sold extensively.

21. The HomeMag Goods and Services marketed, offered and sold in connection with, and/or bearing the HomeMag Trademarks have been and are widely popular, of a high quality, and have been the subject of unsolicited media coverage.

22. By virtue of HomeMag's use, advertising, promotion and sales of its HomeMag Goods and Services in connection with and/or bearing the HomeMag Trademarks, and the unsolicited media coverage featuring the HomeMag Trademarks, the HomeMag Trademarks have have become associated with HomeMag and have created an association between HomeMag and its HomeMag Trademarks in the mind of consumers.

**Defendant's Infringing Activities**

23. On information and belief, in or about May, 2024, Defendant adopted and began use of the mark "GC HomeMag" (the "Infringing Trademark") in connection with the marketing, advertising and sale of individual geographic market-specific print and digital advertising magazines aimed at real estate buyers and sellers and home improvement professionals (the "Infringing Magazine").

24. On information and belief, Defendant has since May, 2024 been using his Infringing Trademark in connection with the production and sale of his Infringing Magazine, the marketing and sale of advertising services, and the provision of digital publications, all in connection with providing connections between buyers and sellers of real estate and home improvement services in specific geographic markets to which editions of his Infringing Magazine are targeted and directed (collectively, "Defendant's Infringing Goods and Services").

25. Specifically, Defendant has marketed, advertised and sold Defendant's Infringing Goods and Services, through his Infringing Magazine, to geographic markets in which HomeMag has and does provide its HomeMag Goods and Services and markets, advertises and sells its HomeMag Magazine, including without limitation recent editions of the Infringing Magazine Defendant has published directed to Austin, Texas, and various communities in south Florida.

26. On information and belief, Defendant markets and advertises his Infringing Goods and Services online via his website, gcHomeMag.com, and through his Facebook pages, other social media, and via other means of marketing and advertising.

27. Defendant's Infringing Goods and Services, which consist of producing and providing print and digital geographic market-specific magazines and advertising services directed to the real estate and home improvement markets, are similar if not nearly identical to the HomeMag Goods and Services and are offered and sold to the same class of customers and feature the same or similar class of advertisers and advertisements and similar content.

28. Through his website and Infringing Magazine in print and digital formats, Defendant offers for sale and sells, and will continue to offer for sale and sell, Defendant's Infringing Goods and Infringing Services within this judicial district.

29. Defendant's Infringing Trademark is confusingly similar to HomeMag's HomeMag Trademarks in sight, sound, and connotation.

30. Defendant's Infringing Goods and Services are related to the HomeMag Goods and Services that HomeMag provides under and/or in connection with its HomeMag Trademarks.

31. Upon information and belief, Defendant was aware of HomeMag and HomeMag's use of its HomeMag Trademarks in connection with the HomeMag Goods and Services at the time Defendant adopted and began to use Defendant's Infringing Trademark.

32. Upon information and belief, Defendant adopted his Infringing Trademark with the intent to deceive consumers and to cause confusion among purchasers and advertisers, for the purpose of benefitting from the goodwill and public recognition associated with the HomeMag Trademarks and diverting sales and revenue from HomeMag to Defendant.

33. On July 7, 2025, HomeMag prepared and forwarded a letter to Defendant demanding that he cease and desist from use of Defendant's Infringing Trademark in connection with Defendant's Infringing Goods and Services (the "HomeMag Demand Letter").

34. On July 8, 2025, Defendant forwarded an email to HomeMag refusing to cease and desist use of Defendant's Infringing Trademark, telling HomeMag in part to "kindly take your trademark of 'theHomeMag' and tell someone who cares ... [b]ecause this feeble attempt to threaten me, or cease and desist me out of using the brand that i [sic] created will not be tolerated" ("Defendant's Demand Letter Response").

35. Since July 8, 2025, Defendant has continued to market, advertise and sell Defendant's Infringing Goods and Services in connection with Defendant's Infringing Trademark, including through his Infringing Magazine.

36. The aforementioned acts of Defendant is causing and will cause a likelihood of confusion in the minds of the trade and the public, and is damaging and will continue to damage HomeMag's reputation and goodwill in connection with the HomeMag Trademarks and the HomeMag Goods and Services.

## COUNT I
## REGISTERED TRADEMARK INFRINGEMENT (LANHAM ACT § 32)

37. HomeMag repeats and realleges the allegations contained in paragraphs 1 through 36 and the same are incorporated herein and made a part hereof by this reference.

38. The HomeMag Trademarks, apart from the mark ⌂TheHomeMag in International Class 41 which is subject of the Application, shall in this Count I and may elsewhere be referred to as the "Registered Trademarks".

39. HomeMag is the owner of the Registered Trademarks and the Registrations.

40. The Registered Trademarks and the Registrations are valid and subsisting.

41. HomeMag commenced using, and has continuously used the Registered Trademarks in connection with the HomeMag Goods and Services in U.S. interstate commerce since the first use dates set forth in the Registrations.

42. HomeMag adopted and used each of the Registered Trademarks prior to when Defendant commenced using Defendant's Infringing Mark.

43. The Infringing Mark is confusingly similar to each of the Registered Trademarks in sight, sound, and connotation.

44. Each of HomeMag's Registered Trademarks is a strong trademark, based on both its inherent strength and its commercial strength.

45. The HomeMag Goods and Services are goods and services, which are sold, distributed, furnished and/or advertised to the same or similar classes of purchasers as Defendant's Infringing Goods and Services.

46. Upon information and belief, Defendant was aware of HomeMag and of HomeMag's use of its Registered Trademarks prior to the time Defendant selected and commenced using Defendant's Infringing Mark.

47. Defendant continued his infringing activities as pleaded hereinabove after receiving and responding to the HomeMag Demand Letter on July 7, 2025 and July 8, 2025, respectively.

48. Upon information and belief, based upon, without limitation, the similarity of the parties' respective marks, Defendant's prior knowledge of HomeMag and HomeMag's use of its Registered Trademarks, and the relatedness of the parties' goods and services and marketing and advertising channels, and Defendant's conduct constitutes willful trademark infringement.

49. As a result of Defendant's conduct, there is a strong likelihood of confusion, mistake, and/or deception, and many persons familiar with HomeMag's Registered Trademarks are likely to buy and/or use Defendant's Infringing Goods and Services with the mistaken belief that Defendant is affiliated with or sponsored by HomeMag, and/or that Defendant's Infringing Goods and Services originate from HomeMag or are provided by or otherwise authorized, licensed or sponsored by HomeMag.

50. Accordingly, Defendants are engaged in infringement of HomeMag's Registered Trademarks, in violation of the Lanham Act § 32, 15 U.S.C. § 1114(1), by using marks wherein such use is likely to cause confusion or mistake, or to deceive.

51.     On information and belief, Defendants intend to make, and have made, unlawful gains and profits from such unlawful infringement and, by reason thereof, HomeMag has been and will be deprived of rights and profits which otherwise would have come to HomeMag, but for such infringements.

52.     HomeMag has no adequate remedy at law for the injury alleged in this Count. The injury is intangible in nature and not capable of being fully measured or valued in terms of money damages. Further, the injury is of a continuing nature and will continue to be suffered so long as Defendant continues his wrongful conduct.

53.     Defendant's acts are willful, malicious and wanton and Defendant will continue his acts of willful infringement unless enjoined by this Court.

54.     Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining HomeMag's monetary damages caused by Defendant's wrongful conduct, HomeMag is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to HomeMag. HomeMag seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages, if and when, and to the extent the damages are ascertained.

## COUNT II
## TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND UNFAIR COMPETITION (LANHAM ACT ' 43(a))

55.     HomeMag repeats and realleges the allegations contained in paragraphs 1 through 36 and the same are incorporated herein and made a part hereof by this reference.

56.     HomeMag is the owner of the HomeMag Trademarks.

57.     The HomeMag Trademarks are inherently distinctive.

58. The HomeMag Trademarks have acquired distinctiveness and a secondary meaning.

59. HomeMag commenced using, and has continuously used the HomeMag Trademarks in commerce since their respective first use dates.

60. HomeMag adopted and used the HomeMag Trademarks prior to when Defendant commenced using Defendant's Infringing Mark.

61. Defendant's offering and sales of Defendant's Infringing Goods and Services using Defendant's Infringing Mark creates a likelihood of confusion with HomeMag, HomeMag's HomeMag Trademarks, and with HomeMag's offering and sales of its HomeMag Goods and Services using its HomeMag Trademarks.

62. Defendant's Infringing Mark is confusingly similar to the HomeMag Trademarks in sight, sound, and connotation.

63. The HomeMag Goods and Services are goods and services, which are sold, distributed, furnished and/or advertised to the same or similar classes of customers, and utilize the same or similar classes of advertisers, as Defendant's Infringing Goods and Services.

64. Upon information and belief, Defendants were aware of HomeMag and of HomeMag's use of its HomeMag Trademarks prior to the time Defendants selected and commenced using Defendant's Infringing Mark.

65. Defendant refused to stop using Defendant's Infringing Trademark in connection with Defenant's Infringing Goods and Services despite receiving notice of his infringements from HomeMag pursuant to the HomeMag Demand Letter on or about July 7, 2025.

66. Upon information and belief, based upon, without limitation, the similarity of the parties' respective marks, Defendant's prior knowledge of HomeMag and HomeMag's use of its

HomeMag Trademarks, and the relatedness of the parties' goods and services and marketing channels, Defendant's conduct constitutes willful trademark infringement.

67. Defendant's actions constitute willful infringement of the HomeMag Trademarks, and the use of a false designations of origin, false representations, and unfair competition, by inducing the erroneous belief that Defendant, Defendant's Infringing Mark, and/or Defendant's Infringing Goods and Services are in some manner affiliated with, originate from, and/or are sponsored by HomeMag, and by misrepresenting the nature and/or origin of Defendant's Infringing Goods and Services, all in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

68. Defendant's actions have caused irreparable harm and damage to HomeMag and will continue to cause irreparable harm to HomeMag, and have caused and will continue to cause HomeMag to suffer monetary damage in an amount thus far not determined.

69. HomeMag has no adequate remedy at law for the injury alleged in this count, and said injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

70. Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining HomeMag's monetary damages caused by Defendant's wrongful conduct, HomeMag is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to HomeMag. HomeMag seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages if, when and to the extent the damages are ascertained.

## COUNT III
## FLORIDA COMMON LAW TRADEMARK AND SERVICE MARK INFRINGEMENT

71. HomeMag repeats and realleges the allegations contained in paragraphs 1 through 36 and the same are incorporated herein and made a part hereof by this reference.

72. HomeMag first used the HomeMag Trademarks in 2003, and has through the investment of considerable time, effort, and money into the HomeMag Trademarks over the past 22 years established considerable goodwill and a favorable reputation amongst consumers of the HomeMag Goods and Services.

73. The HomeMag Trademarks are subject to trademark protection in Florida.

74. On information and belief, Defendant was aware of HomeMag's use of its HomeMag Trademarks in connection with the HomeMag Goods and Services at the time it adopted and commenced use of Defendant's Infringing Trademark in connection with Defendant's Infringing Goods and Services.

75. Defendant's use of Defendant's Infringing Trademark is without the permission, consent, or authorization of HomeMag.

76. The actions of Defendant as alleged hereinabove have created a likelihood of confusion, which will continue unless Defendant ceases use of Defendant's Infringing Mark.

77. The acts of Defendant, including Defendant's use of Defendant's Infringing Marks, constitute trademark and service mark infringement, in violation of the common law of the State of Florida.

78. The foregoing acts of Defendants have injured and will continue to injure HomeMag, by depriving it of sales of its genuine goods and services, by injuring its business reputation, and by passing off Defendant's Infringing Mark and Defendant's Infringing Goods and Services as those of HomeMag, all in violation of the common law of the State of Florida.

79. Defendant's acts have caused irreparable harm and damage to HomeMag and have caused HomeMag monetary damage in an amount thus far not determined, for which

14

HomeMag is entitled to its actual damages, Defendant's profits, punitive damages, attorneys' fees and costs.

80. HomeMag has no adequate remedy at law for the injury alleged in this count, and said injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

81. Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining HomeMag's monetary damages caused by Defendant's wrongful conduct, HomeMag is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to HomeMag. HomeMag seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages if, when and to the extent the damages are ascertained.

## COUNT IV
## FLORIDA COMMON LAW UNFAIR COMPETITION

82. HomeMag repeats and realleges the allegations contained in paragraphs 1 through 36 and the same are incorporated herein and made a part hereof by this reference.

83. Defendant's infringing use of Defendant's Infringing Trademark in connection with Defendant's Infringing Goods and Services constitutes unfair competition. Defendant's conduct is deceptive and misleading and is likely to cause further consumer confusion.

84. Defendant's conduct willfully disregards HomeMag's valuable intellectual property rights in its HomeMag Trademarks.

85. Defendant's acts have caused irreparable damage and injury to HomeMag and will continue to cause irreparable injury to HomeMag unless Defendant is enjoined from further infringing upon the HomeMag Trademarks.

86. HomeMag has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

## COUNT V
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

87. HomeMag repeats and realleges the allegations contained in paragraphs 1 through 36 and the same are incorporated herein and made a part hereof by this reference.

88. The foregoing conduct by Defendant violates § 501.204 of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

89. Defendant offers Defendant's Infringing Goods and Services under Defendant's Infringing Trademark nationwide, including throughout the State of Florida.

90. Defendant's use of Defendant's Infringing Trademark constitutes an unfair method of competition under FDUPTA and is an unconscionable and unfair practice in the conduct of trade or commerce.

91. Defendant used Defendant's Infringing Trademark in connection with its Infringing Magazine and Defendant's Infringing Goods and Services, and marketed and advertised nationally through the Internet, social media, and all other available channels, including to customers in the State of Florida, resulting in present consumer confusion and the probability of ongoing consumer confusion, as to HomeMag's affiliation, connection, or association with Defendant and his services.

92. Defendant's acts have caused irreparable damage and injury to HomeMag and will continue to cause irreparable injury to HomeMag unless Defendant is enjoined from further infringing upon the HomeMag Trademarks.

93. HomeMag has no adequate remedy at law and is suffering irreparable harm and damages as a result of the wrongful acts of Defendant in an amount to be determined at trial.

**PRAYER**

WHEREFORE, HomeMag respectfully requests judgment in its favor against Defendant as follows:

A.  That Defendant's conduct serves to infringe HomeMag's Registered Trademarks, in violation of Lanham Act § 32, 15 U.S.C. § 1114.

B.  That Defendant's conduct serves to infringe the HomeMag Trademarks, falsely designate the origin of Defendant's Infringing Goods and Services, falsely describe such goods and services, and unfairly compete with HomeMag, all in violation of Lanham Act § 43(a), 15 U.S.C. § 1125.

C.  That Defendant's wrongful and infringing conduct has caused consumer confusion and has caused irreparable damage and injury to HomeMag, and has caused HomeMag to suffer damages, all in violation of the common law of the State of Florida.

D.  That Defendant's wrongful and infringing conduct willfully disregards HomeMag's valuable intellectual property rights in its HomeMag Trademarks, has caused irreparable damage and injury to HomeMag, has caused HomeMag to suffer damages, and constitutes unfair competition, all in violation of the common law of the State of Florida.

E.  That Defendant's wrongful and infringing conduct consituters an unfair method of competition, has caused irreparable damage and injury to HomeMag, and has caused HomeMag to suffer damages, all in violation of § 501.204 of the Florida Deceptive and Unfair Trade Practices Act.

F.  That Defendant and his directors, officers, members, managers, employees, attorneys, agents, servants, parents, subsidiaries, affiliates, successors, heirs, assigns, and all

others in active concert or participation with Defendant be preliminarily and permanently enjoined from directly or indirectly:

    i. Using any of the HomeMag Trademarks, or any other marks which are similar to or are colorable imitations of any of the HomeMag Trademarks, including without limitation the Infringing Trademark, whether alone or as a part of, or together with, any other designs, word or words, trademark, service mark, trade name, trade dress, domain name, social media address, or other business or commercial designation or any logo, symbol or design;

    ii. Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done amounts to false designation of origin, false description or false representation of Defendant's goods and services; and

    iii. Otherwise unfairly competing with HomeMag.

    G.    That the Court issue an Order directing Defendant to file with the Court and serve on HomeMag, within thirty (30) days after the service on Defendant of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction.

    H.    That the Court award judgment in favor of HomeMag for the damages sustained by HomeMag and the profits made by Defendant as a result of Defendant's wrongful conduct.

    I.    That the Court award judgment in favor of HomeMag in the amount of treble damages.

    J.    That the Court award judgment against Defendant for the full costs of this action, including reasonable attorneys' fees.

K. That the Court award to HomeMag punitive damages sufficient to deter Defendant from committing such willful acts of infringement in the future.

L. That this Court requires a full and complete accounting of all monies received by Defendant as a result of the sales made by or on behalf of Defendant under Defendant's Infringing Mark.

M. For interest on all amounts found to be due to HomeMag from Defendant, at the prevailing rate, from the date said amounts or any part thereof became or becomes due.

N. That the Court requires Defendant to notify their commercial associates, suppliers, and customers of said Order.

O. That the Court orders such other, further, and different relief as the nature of this action may require and that the Court may deem just and proper.

P. That the Court retains jurisdiction of this action for the purpose of enabling HomeMag to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

## JURY TRIAL DEMANDED

Plaintiff HomeMag hereby demands a jury trial of all issues so triable.

Dated: August 28, 2025

Respectfully submitted,

**GAMBERG & ABRAMS**

By: /s/ *Jared Gamberg*
JARED L. GAMBERG
Fla. Bar No. 302510
4651 Sheridan Street, Suite 200
Hollywood FL 33021
Email: JaredGamberg@GambergLaw.com
Telephone: (954) 981-4411
Fascimile: (954) 966-6259

**JEFFREY M. ROLLINGS** (*Pro hac vice pending*)
New York Bar No. 3045143
NOLTE LACKENBACH SIEGEL
111 Brook Street, Suite 101
Scarsdale, New York 10583
Email: JRollings@NLS.com
Telephone: (866) 201-2030
Fascimile: (832) 201-8247